6   519<br>84  151

## HOLLIDAY v. WEST.

At the civil law, a mere non-performance within a stipulated time, does not, *ipso facto,* annul a contract, unless, indeed, time is of the very essence of the contract.

Where the grantor of defendant obtained an Alcalde's grant to a town lot in 1843, and was put into possession thereof and commenced building thereon, (his grant containing the usual condition of building within one year,) and was compelled to suspend the erection of his house, and the lot remained unoccupied till 1849, when he went again into possession and built a house, which possession was maintained till the bringing of this suit; and the plaintiff's grantor obtained a grant of the same lot in 1847, but never went into possession; *Held* that there was no forfeiture of the grant of defendant's grantor on the ground of non-performance within the time, unless something else was done to produce it.

And where the grant of plaintiff's grantor was never recorded, and it appears that owing to mistakes having occurred in the granting of lots, grants having in some instances been made to two persons for the same lot, the Alcalde, about six months after giving the grant to plaintiff's grantor, gave notice to all persons to appear and have their grants adjusted, which notice was complied with by defendant's grantor, but not by plaintiff's grantor, the former being then again placed in possession; *It seems* that no inference arises that the granting power had resumed the land, as by a forfeiture of defendant's grantor, for the purpose of granting the lot to plaintiff's grantor.

The only conclusion is that the second grant was made by mistake, and that the second grantee was perfectly aware of the invalidity of his grant, and either made no legitimate effort to obtain possession, or did so and failed.

APPEAL from the District Court of the Twelfth Judicial District.

This was an action of ejectment for a lot of land in the city of San Francisco, being part of fifty-vara lot 162. Both plaintiffs and defendants claimed title to the lot under distinct Alcalde grants. That of plaintiffs' grantor, Pell, was made in 1847, and that of defendants' grantor, Bee, in 1843. It was contended, however, on the part of the plaintiff, that the defendants' grantor had abandoned and forfeited the lot. The substance of the testimony on this point is fully set forth in the opinion of the Court.

The court below gave judgment for defendants. Plaintiffs moved for a new trial, which was overruled, and plaintiffs appealed.

*F. M. Haight* for Appellants.

Holliday v. West.

Two distinct titles were given in evidence. The title of the plaintiffs for lot 162 covered the premises in question. The grant to Bee was forfeited when the second grant was made. Under the law, as existing at the period of these transactions, a failure to comply with conditions subsequent, rendered the grant *ipso facto* void, and no ceremonies were necessary to divest the estate. If any evidence of intention to divest the estate was necessary, it was found in the subsequent grant to Pell and putting him in possession. Touchard v. Touchard, decided in this Court, July Term, 1855; Holliman's Heirs v. Peebles, 1 Texas R., pp. 673, 701; Clark's Heirs v. Christ Church, La. R., Vol. 4, p. 286; to the same point La. R., Vol. 8, p. 457; Partida, Moreau & Carlton, Vol. 2, p. 745. At common law I find no cases of an entry on a vacant possession. The party seeking a forfeiture must in general, in some way, evidence that intention, and as a general rule it is done by re-entry. A re-entry, however, is not necessary, or any other act, where the party claiming the forfeiture is already in possession. 5th Mass. R., p. 321. Where there is no possession, the land vacant and unoccupied, there is no necessity of an entry to regain possession. The possession follows the title.

There are a series of cases in Alabama at common law, settling this principle. In estates granted by Government subject to forfeiture upon future conditions; in the event of their forfeiture, no entry or other act is necessary in order to divest the estate out of the grantee. Kennedy & Moreland v. Heirs of McCartney, 4 Porter, 141; Gill v. Taylor, 3 ib., 182; Trustees of University of Alabama v. Winston, 5 Stewart & Porter, 17.

The grants made in pueblos under Mexican or Spanish dominion, were in pursuance of, and in accordance with, governmental decrees and regulations; especially the requirement to build within a year. Rockwell Spanish Law, p. —.

The whole subject of colonization was regulated by laws. But in the cases cited it is said that individuals or corporations must do some act evincing an intention to forfeit. The Court say entry, or some other act. In this case the District Judge did not deem there was sufficient evidence of intention.

*Lorenzo Sawyer* for Respondents.

Appellants say the grant to Bee, under which respondents' claim, was forfeited for breach of condition, and the land subjected to be granted a second time. Respondents reply:

1. That the conditions of the grant are conditions subsequent. United States v. Arredondo, 6 Peters' R., 745; Vanderslice v. Hanks, 3 Cal. R., 40.

2. "Conditions subsequent are not favored in law, and are strictly construed, because they tend to destroy estates; and the rigorous exaction of them is a species *summum jus*, and in many cases hardly reconcilable with conscience. A Court of Equity will never lend its aid to divest an estate for the breach of a condition subsequent. The

Holliday *v*. West.

cases, on the contrary are full of discussions, how far chancery can relieve against subsequent conditions." 4 Kent's Com., 129–130.

3. " So long as these estates (*not the conditions*) upon conditions subsequent, remain unbroken, they remain in the same situation as if no such qualification had been annexed. The persons who have an estate of freehold, subject to conditions, *are seized*, and may convey, demise or transmit the inheritance," etc. 4 Kent, 125.

4. A condition does not defeat the estate, although it be broken, until entry by the grantor or his heir." 4 Kent, 126.

" There must be an actual entry, for the breach of the condition." Ib., 127.

" When the estate is a freehold, the breach of the condition does not cause the *cesser* of the estate, without an entry or claim for the purpose." Ib., 128.

There must be a formal entry upon the land for this express purpose. 1 Hilliard on Real Prop., § 36, pp. 364, 384.

5. At common law, when a grant is made by Government, upon condition subsequent, the Government can only declare the forfeiture, and acquire seizin by matter of record. There must be an inquest of office. People *v*. Brown, 1 Caines' R. 426.

So in regard to escheated estates. Fairfax Dev. *v*. Hunter's lessees, 7 Cranch R., 622; Alexander *v*. Grump, 1 Mulford, 134, 141, 142, 149.

In case of a subsequent grant, the prior forfeiture of a former grant should be recited. The fact that a subsequent grant has been made, and a patent issued by the proper officers, raises no presumption that inquest has been had and the former estate divested. The proceedings must be shown. Ib., 142; Thompson *v*. Bright, 1 Cush., 428–9; Jackson *v*. Smith, 7 Wend., 367.

6. The Spanish and Mexican law is in this respect in exact accordance with the common law. In grants by the Mexican Government, " the want of performance (of conditions subsequent) could only be taken advantage of by a proceeding instituted by Government for special purposes." Viques *v*. U. S. Commissioner Thompson's Opinion; Hancock *v*, McKinlay, 7 Texas R.

That there must be some proceeding under the Spanish law in the nature of an inquest of office at common law, to re-vest in the Government lands once granted upon conditions subsequent, clearly appears from numerous cases. United States *v*. Mitchell, 9 Peters R., 742.

The Supreme Court recognize and act upon the fact that the Mexican authorities never revoked a grant for condition broken. See United States *v*. Sebbald, 10 Peters' R., 321.

7. There must not only be a judicial proceeding to declare a forfeiture, but the proceeding must be recited in the petition for, and subsequent grant. See cases cited by appellants' counsel; Heirs of Holliman *v*. Peebles, 1 Texas R., 694, and following pages.

8. But it is said this is not a grant by Government, and these authorities do not apply, but that this is a case of a grant by a corpora-

tion of its own lands, and is to be governed by the rules applicable to grants by private individuals. We have seen that wherever an inquest of office is necessary on behalf of Government, an actual entry must be made by an individual.

"A breach of condition, annexed to a freehold, can be taken advantase of by the grantor, only by means of an entry upon the lands for this express purpose. 1 Hilliard on Real Prop., § 36, pp: 364, 366, 384. Bowen v. Bowen, 18 Conn. R., 535. See in particular this case. Crass et al. v. Carson, 8 Blackf. R., 138–9 ; Ludlow v. N. Y. & H. R. R. R. Co., 12 Barb., 440 ; Lincoln Bank v. Drummond, 5 Mass. R., 321.

9. As the benefit of a condition can be reserved only to the grantor and lessor, and his heirs, so no person could enter for breach of an express condition at common law, except parties and privies in right and representation—that is, heirs, executors, etc., of individuals, or the successors of corporations. Neither privies nor assignees in law, as the lord by escheat, nor privies in estate, as remaindermen and reversioners, had a right of entry. 1 Hilliard, Real Prop., § 42, pp. 366, 386, and § 46, p. 387; 4 Kent, 127; Nicoll v. N. Y. & E. R. R. Co., 12 Barb., 462 : Cross v. Carson, 8 Black., 138.

10. A re-entry for condition broken will not be presumed from a second grant by the grantor or his heirs, nor from lapse of time, even when supported by possession under the second grant. A re-entry must be shown. Garrett v. Scanton, 3 Denio, 335 ; Anderson v. Beck, 15 How. U. S. Ct. R., 328–9. See, also, authorities above cited to show that grants or patents by Government are not evidence of a forfeiture having been perfected by an inquest or otherwise.

11. At the date of the grant to Pell, there had been no entry for breach of the condition in the grant to Bee, and the estate of Bee was still unbroken.

No authority is shown in the alcalde to enter for breach of condition. In this he acted not as a public officer, but as an agent of the corporation in regard to its property, in relation to the rights which pertain to the corporation in its private and not public capacity. His authority must be shown. Authority to grant does not necessarily include authority to revoke. Thorne v. San Francisco, 4 Cal., 146.

*Hall McAllister* for Respondents.

1. This case is entirely distinguishable from that of Touchard & Sullivan v. Touchard, decided at the July Term, 1855, of this Court.

In the Touchard case, Johnson, the original grantee under whom plaintiffs claimed, " did not, within a year after his grant, or up to the time of Linn's grant, (Linn being the original grantee under whom defendant claimed,) or at any other time, improve or take actual possession of the lot granted."

Johnson also distinctly admitted to several witnesses that he had abandoned and forfeited his grant.

There was much evidence also in the Touchard case tending to

establish the existence of a "usual custom," as to the mode of forfeit-
ing grants, the subsequent conditions of which had not been performed,
and also to show that the custom in question had been complied with
in that case.

No such proof exists in the present action.

If a particular custom exists, and a party desires the benefit of it,
he must put it in proof, make it a part of his case, otherwise it is en-
tirely outside of it.

It is like a foreign law, unrecognized by the Court until proven.

Respondents do not seek to impugn the decision of this Court in
Touchard's case; that has now become a rule of property, and should
not be disturbed, but they do contend that that decision is inapplicable
here.

The question of denouncement was also the point of the decision of
this Court, as is manifest from the opinion rendered.

Denouncement and re-entry are entirely dissimilar; the former is a
judicial, or at least a *quasi* judicial proceeding; while the latter is the
simple act of the grantor, unaccompanied by any declaration before a
judge or magistrate, or other proceeding whatsoever.

The Touchard decision is clearly and only to the point, that the
Pueblo of San Francisco was a municipal corporation with the same
powers of granting lands, and of resuming ownership thereof for breach
of conditions subsequent, as a private natural person.

We admit this doctrine in its full force; we only ask on the part of
respondents that the pueblo may be held to the same mode, manner, and
rule, of resuming ownership, as that which prevails in the case of pri-
vate individuals.

That the conditions of the grant under which we claim title are sub-
sequent, is too plain for argument.

II. How must the non-performance of conditions subsequent be taken
advantage of?

By an emphatic entry upon the land for this express purpose. 1 Hil-
liard Real Property, 384, § 36.

The intent of producing the forfeiture is a necessary element of the
entry; without it there is no effectual entry.

An entry and demand of possession simply, is insufficient; it must
be stated to be for breach of condition, or for the purpose of defeating
the prior estate. Bowen *v.* Bowen, 18 Conn., 535, is express upon this
point.

This entry is a thing of substance, and up to the point of time the
entry is made, the title, with all the attributes of ownership, remains
completely vested in the grantee of the prior estate.

The entry must be *animo clamandi.*

Neither can the entry be a silent one, though the intent to forfeit
exist; the expression of that intent must accompany the physical act of
entry. It must not remain locked in the breast of the grantor. 1 Hil-
liard Real Property, p. 83, ch. 2, 21.

Respondents contend that whether the land be vacant or occupied, in no way affects the question of re-entry by the grantor.

"Entry is an act *in pais*, which in point of notoriety is equal, and analogous to, the ancient feudal investiture which always took place in the presence of the other vassals, the feudal peers of the grantee; its object, therefore, in case of a condition broken, is to give notice of the resumption of seizin not to the grantee, but to the *pares* or freeholders of the county." Justice Gibson, Hamilton *v.* Elliott, 5 Serg. & Rawle, 386; Willard *v.* Henry, 2 New Hamp., 122.

III. Who can take advantage of the breach of a condition subsequent?

Privies in estate, grantees, assignees, and the like, have no right of re-entry. The right is personal to the grantor. Nicoll *v.* N. Y. & E. R. R. Co., 12 Barb. S. Court Rep., 462, and Cross *v.* Carson, 8 Blackford, 138.

In addition to these views, I would suggest, that according to the Mexican law, though the alcalde, or juez de paz made the grant, that the judicial possession was delivered by the sindico, the collector of the municipal fees, and that possession was not given until these fees were paid. It would seem to follow logically that the officer who gave seizin originally, was the proper representative to re-enter.

That officer was the sindico.

IV. There was no such entry in this case as would defeat the prior estate.

The entry cannot be made for one purpose, and afterwards be used, and advantage taken of it, for an entirely different one.

No declaration of the intent accompanied the act of entry, but as matter of fact there was no intent on the part of the grantor, or of the alcalde, to produce a forfeiture.

V. It is argued by appellant's counsel that this necessity of re-entry to effect forfeiture of estate for non-performance of conditions subsequent, did not exist under the Mexican system.

That there was nothing in the Mexican legal system known by the common law name of "livery of seizin," is true, but that there was something in that system under a different name, identical with it, is equally true.

The juridical possession, which was the invariable accompaniment of a grant, whether it came from the general government, or the municipality, or pueblo, was a substantial livery of seizin.

Now, upon general principles, common alike to all systems of law, the same solemnity which accompanies the vesting of an estate, must attend its forfeiture and devesting.

*Nihil tam conveniens est naturali æquitati quam unumquodque dissolvi eo ligamine quo ligatum est.* Broom's Legal Maxim's, 681.

VI. Suppose no formal re-entry necessary; suppose nothing in the nature of juridical possession requisite to devest the title; certainly there must be an intention on the part of the grantor to forfeit, before the

estate can be defeated. Garrett v. Scouten, 3 Denio, 334; Anderson v. Bock, 15 How. S. Ct. R., 328; Gaskill v. Trainer, 3 Cal. R., 329.

VII. If the presumption contended for by appellants arises from the second grant to Pell, such presumption is repelled and overborne by the other facts and circumstances of this case.

Several important facts appear. That grants had been made by mistake by the American alcalde. That these mistakes had arisen in consequence of a new survey of the town. That as soon as Hyde gave the notice above mentioned, Henry Bee, under whom respondents claim, presented his grant and asserted his rights.

Mr. Justice HEYDENFELDT delivered the opinion of the Court. Mr. Justice TERRY concurred.

The appellants cite and rely upon the case of Touchard v. Touchard, 5 Cal. R., as being conclusive of this. In that case a subsequent grant of a lot by a municipal corporation was held valid against an older grant, on the ground of the non-performance of the conditions by the elder grantee. The only question made there in favor of the first grant was that the Mexican law, which then prevailed, required the proceeding of denouncement before there could be a legal forfeiture of the grant. But we held that that proceeding only applied to grants made by Government, and was totally inapplicable to the contracts of private individuals. A denouncement was never made by the grantor, but always by some person who desired to obtain the land for himself.

In that case it was also shown in evidence, that it was the custom, upon the part of the authorities of the pueblo, to re-grant lots when the first grantee had failed to occupy, or otherwise comply with the conditions of the grant, without resorting to any other step whatsoever, to indicate a forfeiture, or a determination on the part of the grantor to resume the ownership. And there was also given in evidence an admission, on the part of the first grantee, that he had forfeited the lot; and that decision might well have been placed on the ground of abandonment.

The case before us shows no such state of facts; but now the respondents insist, and so it was held by the District Court, that in order to invalidate the first grant there must have been a re-entry by the grantor, or some other notorious act, in order to show the intention by the grantor, to forfeit the grant, and resume the estate upon the ground of the non-performance of the conditions, and that the subsequent grant is no proof of such intention.

This position would be unassailable if we were at liberty to apply the principles of the common law to this case, but the facts all arose before the adoption of the common law, and must be governed by the rules of the civil law.

We have said before that the Mexican civil law having been the law of this State at the time of the adoption of the Constitution, we are bound judicially to know it, and however indisputable is that legal

34

maxim, yet it is sometimes very difficult to make a practical application of this knowledge.

· The civil law, as a system, is so variant from the common law, and having its manifest influence upon the forms and modes of making contracts, makes it often difficult to discover a rule which is at all cognate to a well understood one of the common law. And therefore we discover no rule whatever at the civil law, answering to the common law doctrine of re-entry to produce a forfeiture. It does not follow, however, that that system was destitute of principles which, to an equal extent were potent to secure and enforce the rights of litigants in like cases. And so we find that instead of an unbending rule which disregards material clashing circumstances, each case was determined according to its own facts, by those principles which every system would admit to be the immutable laws of right and wrong.

In reflecting that those laws were to be applied in view of the facts in every case, according to the various moral instincts and powers of perception of different judges, it may well be disputed, when placed in apposition with the symmetry and certainty of the common law, which system is capable of conferring the most solid advantages and lasting benefits to society. Not to digress further into the region of legal dialectics, I propose now to consider the facts of the case before us, and according to those facts to determine the right.

The plaintiffs claim title from one Pell, who, in January, 1847, obtained a grant from the city authorities to the lot in question, upon the usual condition, that he should, within one year, build a house upon it. Pell never took possession of the lot, although it was unoccupied until 1849, when the grantors of the defendant went into possession and built a house. Then Pell attempted to get possession by suit, but was unable to do so. In his petition to the Alcalde for the grant, he represented the lot as vacant. No further attempt was made by him to get possession, and in 1854, nearly eight years after his grant, when the value of the lot had reached the sum of thirty thousand dollars, he sold to the plaintiffs for the sum of fifteen hundred dollars.

The defendants claim, through several mesne conveyances, from one Bee. The latter applied for and obtained his grant in 1843, with the usual condition of building a house within a year. Possession was delivered him with all the formalities which the law required, and he soon afterwards commenced building on it, constructed an adobe foundation for his house, and had lumber placed upon the lot. The breaking out of a revolution checked his progress in building, and he did not afterwards resume it. He resided at San Jose up to the time he sold the lot; but he continuously claimed it, had an agent to see to it for him, visited it usually when he came to San Francisco, and it was commonly known as his, and called Bee's lot. He testified that he could obtain no grant to any other lot on account of his ownership of the one in question. In 1849 he sold it to parties through whom the defendants claim, who immediately went into actual possession, which has been held ever since uninterruptedly by them and their grantees.

It appears, further, that Pell's deed was never recorded, and has been lost. That in 1847 the Alcalde, ascertaining that mistakes had been made in granting the same lots to more than one person, arising from the re-survey of the city and the numbering of the lots, gave notice to all those who held grants which had issued before the re-survey, to appear before him and have their grants adjusted, offering to those who had grants of lots which had before been granted, to take other lots in their places. This was only about six months after the grant to Pell. He neglected to take any action under this notice, but Bee went forward and presented his deed, and the Alcalde ordered the syndic to put him again in possession, which was done.

The grant to Bee, then, was the elder grant, and must have the right, unless it has been legally deprived of it. This might occur in two ways, by abandonment or by forfeiture. There is no attempt to insist upon the former ; all the facts show a continous claim of property and a continuous care and interest in it.

But it is urged that he had forfeited his right by failing to comply with the condition named in the grant, requiring him to build a house within a year; and that the grantor had, therefore, taken advantage of the condition broken, and for that reason had made a new grant to another, and by making the latter grant had evinced the design of enforcing the forfeiture.

Now, by the rules of the civil law, the mere non-performance alone, within the stipulated time, does not annul a contract, *ipso facto*, unless, indeed, the time is of the very nature and essence of the contract. Domat says: "In all covenants, in which one of the contractors is obliged to do or give a thing, or to accomplish in any other manner that which is agreed on ; and especially in those in which the non-performance is to be attended with a dissolution of the contract, or with some other penalty, it is equitable, and for the public interest, that the covenant, be not immediately dissolved, nor the penalties incurred, for every sort of non-performance indifferently. Thus, for example, if the buyer does not pay the price at the time appointed, the sale shall not be instantly annulled, even although it had been so agreed on ; but a certain time is allowed to the buyer to pay the price before the sale be made void. And in the other cases of backwardness, whether of payment or delivery of anything, the judge ought, in prudence, to grant such delays as may be reasonable, according to circumstances." Domat, Tit. 1, Sec. 3, Art. 15.

In Tit. 1, Sec. 4, Art. 19, he says further: "Clauses of nullity and penal clauses are not always executed to the rigor; and covenants are not dissolved nor penalties incurred in the very moment which the contract bears, even although it should be agreed on that the contract should be void by the bare deed, and without any ministerial act of justice."

See, also, Tit. 1, Sec. 4. Art. 16.

From these authorities it is very evident that there was no forfeiture of Bee's grant, on the ground of non-performance within the time,

unless something else was done to produce it. Now, if the grantor of an estate upon condition subsequent, does not complain of a breach, it does not lie in the mouth of any one else to do so. Therefore, in this case, it is necessary to examine the conduct of the grantor, for the purpose of ascertaining if it designed to avail itself of the non-performance, and assert its legal advantage arising therefrom.

To show this, the simple fact of a grant to another is relied on. But what are the accompanying circumstances? The alcalde who made the second grant was a stranger, had been in the country but a short time, but recently had gone into the office which made him the representative of the city, and the petition sent to him described the land as vacant.

Now, instead of these facts showing any intention to forfeit the former grant, or to complain of the former grantee, it merely discloses a total want of knowledge on the subject, a total ignorance of the fact that the lot had been already granted, and a consequent mistake in granting it again. But, if this were not enough, what occurred six months subsequent to it places it beyond any doubt whatever. The then acting alcalde discovered that mistakes of this kind had been made. Representing the pueblo, he gave notice to all who had deeds prior to the new survey of the city, to come in and have these mistakes corrected. And, as if to add more weight to this distinct admission, the first grantee went through the formula of being once more put in possession by the regular officer of the law.

Under this view of the case, I can come to no other conclusion than that the grantor made the second grant by mistake—that it never complained of the first grantee's non-performance of conditions, nor ever designed to avail itself of any advantage therefrom; that the second grantee was perfectly aware of the invalidity of his grant, and either did not make any legitimate effort to recover possession, or if he did, and failed in doing so, the subject is res adjudicata, and he would be barred on that ground.

Judgment affirmed.